# THE CHICO CONTRACTING COMPANY

## VS

# FLORENCE E. WHITE et al.

### SUPERIOR COURT, COUNTY OF BUTTE.

( Chico Street Improvement Case )

1924.

---

Three actions by the Chico Contracting Company, a corporation against Florence E. White and others, against R. J. Ferguson and others and against D. Breslauer and others.
Judgment for the defendants.

---

1.  PARTIES — CITY PAVING CONTRACTS — CONTRACTOR MAY SUE TO DETERMINE VALIDITY.

A contracting company having entered into a contract with a city to pave certain streets, may where certain parties file protests with the City Council questioning the validity of the proceedings, bring proceedings against them and the City in the Superior Court to determine the validity of the proceedings and contract.

2.  PARTIES — CITY—CONTRACTOR'S ACTION AGAINST PROPERTY OWNERS.

In an action by a contractor with the city to pave certain streets against objecting property owners to determine the validity of the contract and proceedings and right to assess property owners for the work, the city is a necessary party.

3.  MUNICIPAL CORPORATIONS — CHANGE OF GRADE —RESOLUTION OF INTENTION DEFECTIVE.

A resolution of intention to change the grade of city streets which was required by statute to refer to the "Change of Grade Act of 1909" but which instead mentioned an Act of 1919, there being no such Act, is insufficient to support a legal and valid change of grade.

4.  MUNICIPAL CORPORATIONS — STREETS — GRADE —RESOLUTIONS VITAL.

The resolution of intention to change a street grade is the vital step taken which gives the Board of Trustees authority to so proceed and, unless properly given as required,

by correctly referring to the "Change of Grade Statute of 1909," it is invalid and fails to give the Trustees such authority.

5. MUNICIPAL CORPORATIONS — CHANGE OF STREET GRADE — NOTICE OF INTENTION — POSTING.

Failure to post resolution of intention to change grade of street at two public alleys and posting of only one notice on a 132 ft. section of a street where the law requires not less than three notices on each street held sufficient irregularity to avoid payment of assessment if ignored in action to test validity of proceedings before contract performed.

6. MUNICIPAL CORPORATIONS — STREETS — CHANGE OF GRADE — BIDS — ERROR IN TIME — EFFECT.

In a proceeding to change the grade of streets a notice to bidders specifying the time as "four A. M." as published and posted and later changed to "P. M." was insufficient, the bids being received at about "four P. M."

7. TIME — POSTING NOTICE — COUNTING DAYS.

A notice posted April 6, 9:30 P. M. inviting bids at four P. M. April 16th following gives the full ten days required notice since the first day is not counted and the last is counted.

8. TIME—PUBLISHED NOTICE—HELD NOT TEN DAYS.

Notice published April 7th for first time allowing bids until April 16th following was not the full ten days required by statute.

---

**H. D. Gregory, Judge.**

---

In the Superior Court of the State of California In and for the County of Butte.

The Chico Contracting Company, a corporation, Plaintiff, vs. No. 10113. Florence E. White, et als., Defendants.

The Chico Contracting Company, a corporation, Plaintiff, vs. No. 10141. R. J. Ferguson, et als., Defendants.

The Chico Contracting Company, a corporation, Plaintiff, vs. No. 10118. D. Breslauer, et als., Defendants.

The three cases above entitled were, by stipulation of the parties consolidated and heard together.

The plaintiff, The Chico Contracting Company, having entered into a contract with the City of Chico for the improvement and paving of certain streets in said city, and because of the fact that the Defendants named in the three actions above entitled filed protests before the City Council of said City, and in said protests questioning the validity of the proceedings of the said City Council in the steps taken to give the said city the authority to enter into said contract with the Plaintiff, are now seeking to have a declaratory judgment declaring either that the said contract is valid and in full force and effect or that by virtue of certain irregularities in said proceedings the said City Council did not have authority to enter into said contract and that said contract is invalid, and that assessments for improvements against the property owners in the territory set out to be assessed would be invalid.

On the question of the proceedings herein and the right of the Plaintiff to institute these actions seeking such declaratory judgment, the opinion filed in August of this year by Honorable James W. Bartlett, sitting as Judge of this court and passing upon the demurrers submitted by the several parties, is full and complete and beyond question shows that under the law of this State such proceedings are proper and valid.

At the trial the Defendant, The City of Chico, through its counsel J. D. Peters, moved to dismiss as to the Defendant City of Chico, and also moved for a non suit as to the said Defendant City of Chico. Judge Bartlett referred to the fact that there must be an actual controversy in which the City of Chico is involved before proceedings could be had against it for such declaratory judgment.    It is not necessary that the controversy be between the City of Chico and the Plaintiff, and if such controversy is between the protesting property owners it is a controversy contemplated by the law constituting the validity of

proceedings seeking declaratory judgments. The real test is: Is the Defendant, the City of Chico, a necessary party to these proceedings? There can be only one answer to this question. The City of Chico is a party to the contract which would be either declared valid or declared invalid by the judgment in this case and it would be unreasonable to say that a contract in which the Defendant City of Chico is one of the contracting parties could be declared void and set aside without giving the City of Chico its day in court.

Such a judgment would be grossly erroneous and have no binding effect upon anyone. Therefore it stands without doubt that the city is a necessary party without which the matter could not be fully adjudicated.

The Defendants in these actions complain of numerous irregularities, great many of which are trifling, and if such trifling irregularities are so momentous as to invalidate a contract for street paving then it would be almost impossible to have proceedings so perfect as to validate such contracts.

However three important objections are serious in this case and are as follows: That the change of grade upon the streets proposed to be improved and the proceedings under which said changes of grade are purported to have been made were irregular and failed to give authority to the Board of Trustees to officially change said grades.

Second, that the city officials whose duty it was to post the ordinance of intention to make said improvements did not substantially comply with the law in posting the notices of said ordinance of intention; and, third, that the purported advertising and publishing of the notice to bidders of the time and place of receiving bids for doing the work of making said improvements was insufficient under the law to authorize the Board of Trustees to receive such bids and enter into a valid contract for said improvements.

It has been pointed out by counsel that the work of making these improvements can only be legally done on the official grade of streets proposed to be improved and that each property owner is vitally interested in any official change of grade on the streets to be improved which may enhance the cost of said improvements, and that the change of the official grade would enhance such cost, of which there is no doubt.

It was intended by the city trustees to make such official change of grade under what is known and designated as "Change of Grade Act of 1909." The resolution of intention to change certain street grades, which has reference to the purported change made on the streets proposed to be improved now in controversy in this action, was adopted February 6, 1923, by the City Trustees of Chico. The Act of 1909 provides among other things as follows:

> " When any proceedings are commenced under this Act, the provisions of this Act, and of such amendments thereto as may be hereafter adopted, and no other, shall apply to all such proceedings, and any provisions contained in said acts, or in any acts in conflict with the provisions hereof, shall be void and of no effect as to the proceedings commenced under the provisions of this act. The election of the city council to proceed under the provisions of this act shall be expressed in its ordinance of intention to order any change or modification of grade. The provisions of this act shall be liberally construed to promote the objects thereof. This act may be designated and referred to as the "Change of Grade Act of 1909."

In the rsolution of intention above referred to the reference required by the Act of 1909 is in the following language:

"All of which shall be done under and in accordance with an act of the Legislature of the State of California entitled 'An Act to provide for changing or modifying the grade of public streets, lanes, alleys, courts, or other places within municipalities, approved April 21, 1919, and amendments thereof.'

As will be seen by the above, through some carelessness or inadvertence the Act was referred to as the Act of 1919 instead of as the Act of 1909.

We think the decision of the Supreme Court in the case of Elizabeth Ferri, et al. vs. City of Long Beach (a municipal corporation,) et al. in a very forceful opinion rendered by Judge Sloss, then an Associate Justice of the Supreme Court, and reported in 176 Cal. 645, in which the question was up as to the validity of a change of grade in said city, the Supreme Court held substantially as follows:

"Under section 3 of the Street Opening Act of 1903, requiring the publication and posting of a notice stating the fact and date of the passage of an ordiance of intention to order the work, and briefly describing the proposed improvement and referring to the ordinance for a description of the assessment district and for further particulars, the notice is insufficient to give jurisdiction, and an assessment based on it is void, if the date of the passage of the ordinance is incorrectly stated, and the defect is not cured by the fact that the notice refers to the ordinance for further particulars."

Among other things the Court used this language:

"Proceedings for street assessments, being in invitum, must, in order to charge the property of the owner, be based upon a compliance with the provisions of the statute authorizing the assessment, in so far, at least, as those provisions have to do with the giv-

ing of notice or other steps precedent to the jursidiction of the board to order the work done.

"Where the statute prescribes a certain kind of notice, a court is not justified in saying that some other kind of notice would be equally effective.

Section 3 of the act provides that the notice shall state the fact and date of the passage of the ordinance.    Confessedly, the notice in this case did not state the date of the passage of the ordinance, but stated, as such date, a day seven days prior to its actual passage. It is true that the act contains a provision that its provisions shall be liberally construed.    But no liberality of construction would justify a holding that a notice which fails to state the true date of the passage of an ordinance does state its date.    Nor can we, as suggested by the respondents, hold that there was a substantial compliance with the statute because, as it is claimed, the notice gave the number of the ordinance. The argument is that anyone who desired to inspect the ordinance could find it as readily from a reference to its number as from one to its date.    This may be so, but it does not appear to have been the view of the Legislature, which saw fit to require a statement of the date.    In Haughawout v. Percival relied on by the respondents, the notice was, as we held, substantially that required by the statute, not a notice different from, although perhaps just as good as, the notice called for by the act.    For us to hold that a statement of the number of an ordinance is equivalent, to a statement of its date would be to make a statute, rather than to interpret one.

"It need hardly be said that the defective notice is not cured by the fact that it refers to the ordinance itself for further particulars.    The statute requires such reference in addition to the statement of the date."

It is true that, that had reference to the date of the ordinance which the statute required to be given under that sort of proceeding.    In this case the statute required the reference to be made to the Act of 1909, which said Act characterized itself as "Change of Grade Act of 1909." There is no Act of 1919. Therefore the reference which the Legislature has required in such notices was not given and there is no reference in the resolution of intention to change the grades that refers to the Change of Grade Act of 1909, and therefore the Trustees in their resolution of intention failed to make the reference required by the Act and the proceedings thereunder failed to make a legal and valid official change of grade.    As well said by counsel the resolution of intention is the vital step taken which gives the Board of Trustees the authority to proceed with such change of grade, and, unless properly given as required, it is invalid and fails to give the Trustees such authority.

There being no valid change of grade the contemplated improvements cannot be made upon the change of grade purported to have been adopted on the very streets to be improved.

The second complaint above specified by the protesting property owners that the resolution of intention of the Board of Trustees to make these improvements was not properly advertised by posting as the law requires.    The evidence of the city officials shows that they posted these notices upon all the streets and alleys except two alleys which the City Engineer testified he did not know were public alleys.    However, it was shown by the evidence that the said alleys were public alleys. Also that 132 ft. of a portion of Broadway was within the territory to be assessed for said im-

provements and that only one notice was placed upon said street. The law requires that the notices shall be not less than three hundred feet apart and not less than three on each street.

Had this work been carried out, the improvements made as contemplated and proposed and the contract finished, we do not believe that the payment of assessments could have been avoided because of the irregularity complained of, because with the exception of the failure to place three notices within the 132 ft. on Broadway, while it is admitted that one notice was there posted, and the failure to post notices in the two alleys which were not thought to be public alleys, would be such irregularities as that it could be said that there was not a substantial compliance with the law.

However, as this is not an action in which a property owner is seeking to avoid payment of the assessment, but is an action to avoid the contract on the ground of such irregularities, as well said by counsel, it is quite different and quite important that at the very incipiency of the improvements which will fix a debt against each property owner, we believe that under this phase of the case that the posting was not done according to the full requirements of the law and is a sufficient irregularity to avoid the payment of assessment if ignored at this time and the debt entailed under the contract here sought to be avoided. The line in these matters must be drawn at some place. The officials whose duty it is to look after these matters should be required to appreciate the importance of such details and comply with the law as it exists and not as someone may believe to be sufficient.

The third irregularity complained of is the most serious of all and without doubt invalidates the contract in this case as far as Territory No. 1. is concerned (the improvements contemplated covering three distinct territories in the City of Chico). It appears that through some oversight or, as explained by one

witness, the change of the time for receiving bids from morning to afternoon, that is, from A. M. to P. M. caused the mistake in the notice notifying bidders which was posted on the door of the city council chamber in the municipal building in Chico and also published in the Chico Enterprise as an official notice for the reception of bids, set out that the bids would be received on April 16th at four A. M. It appears that some time before the bids were received this was changed to P. M. but the evidence is not clear as to who made such change, or when it was changed. Therefore, it is undoubtedly on the face of it an invalid notice and the official advertisement in the daily newspaper, where it was required by law to be publisheed, was also an invalid notice and did not properly give the time when said bids would be received, the evidence showing that said bids were received and opened on the afternoon of April 16, 1923, at about the hour of four o'clock P. M.

Also it is contended by the protestants that the advertising by posted notices and the official advertising in the newspaper in which said notice was required by law to be advertised, did not give the full ten days required by law to legally advertise the reception of the bids; one of which bids was accepted by the Board of Trustees and the contract entered into thereby with the Plaintiff in these consolidated cases.

While the notice posted on the door of the city council chamber in the Municipal Building and advertised in said newspaper, as to the second and third territories wherein the improvements were proposed to be made gave the time for the reception of bids as April 16th, 1923, at four P. M. of said day, which was correct, the evidence shows that this notice was posted at 9:30 o'clock P. M. of the 6th day of April, 1923, and published in the daily newspaper on the 7th day of April, 1923, inviting bids to be filed at 4 P. M. of April 16th following.

The law requires that in counting the full ten days. required for giving notice, the first day is not to be counted, but the last day may be counted; or, in other words, the day upon which the action is taken, in this case the bids received, may be counted. According to this in our opinion there would have been ten full days and it is for that very purpose that the law provides either the first day shall not be counted and the last day counted or vice versa, meaning that the fractions caused by the first and last days together with the other days make up the full time.

We think that there is no doubt so far as the posting of the notice was concerned that the full ten days was given, but the advertising of the notice in the newspaper designated must also advertise the full ten days.

The evidence shows that the first publication was made on April 7th, 1923, advertising for the reception of bids at 4 P. M. on the 16th day of April following. The advertising was within the ten days but was not without the ten days; that is, that from the first publication, which was in the afternoon of April 7th, until April 16th was not the full ten days. In other words, the first publication must have been done fully ten days before the day of the reception of the bids which was not done in this case and, therefore, was not a sufficient notice under the law.

It is not necessary to quote the various decisions construing this question because it is so clear and plain that the first publication was not made ten days before the reception of the bids. It would require the counting of the first day and the last day to make up the ten days which is not sufficient under the law.

From the foregoing conclusions it is evident that the irregularities complained of are vital and fatal to the proceedings required by law for making the proposed improvements and therefore the contract made under such irregular proceedings is not a valid con-

tract and assessments could not be legally collected under such proceedings.

There was too much haste in the process of advertising. In order to save a day they have lost many months of valuable time. In advertising there should be no question of a quibble as to time left. It is better to have several days to spare than to have to split hairs on counting the days and fractions thereof.

Also some one person should be required to see that all the details are legally and properly done in all the proceedings down to the smallest detail. That person should be the City Attorney who understands and appreciates the necessity of proceeding as required by the statute. It is unfortunate that this matter has turned out in this way and that the improvements so vitally necessary for the City of Chico should be delayed in this manner, but it is better to delay it now and start and finish right than to proceed on such irregularities as would likely involve the City and the Contractor and the people in endless ligitation after the improvement has been made.

The defendants are entitled to judgment that the contract be declared invalid and the proceedings under which said contract was made be declared invalid, and that the defendants recover of the Plaintiff their costs herein expended.

The attorneys for the Defendants may prepare the findings and judgment of the Court.

H. D. Gregory, Judge.